604 P.2d 629

STATE of Arizona, Appellee,

v.

Manuel Thomas LUJAN, Appellant.

No. 4423.

Supreme Court of Arizona,
In Banc.

Nov. 26, 1979.

Robert K. Corbin, Atty. Gen., Phoenix, William J. Schafer, III, Chief Counsel, Crim. Div., Phoenix, Crane McClennen, Asst. Atty. Gen., Phoenix, for appellee.

Donald E. Wolfram, Phoenix, for appellant.

GORDON, Justice:

Defendant Manuel Thomas Lujan appeals his convictions and sentences following a jury trial, for murder of the first degree,

A.R.S. § 13–452,[1] and burglary of the first degree, A.R.S. § 13–302. Defendant was sentenced to fourteen to fifteen years imprisonment for burglary, and he was sentenced to death for murder. This Court has jurisdiction pursuant to present A.R.S. § 13–4031.

The basic facts according to the testimony at trial are as follows. On the evening of Saturday, April 8, 1978, defendant Lujan and three other young men, Vargas, Garcia, and Hernandez were riding around the streets of Phoenix in Hernandez's car. The testimony at trial indicated that the four men had been drinking malt liquor since that afternoon.

At approximately 10:00 p. m. defendant suggested that they try to "make some money" by stealing something. Vargas suggested going to Southern House, a halfway house for juveniles, located in South Phoenix. The four proceeded to Southern House, which was nearby.

After parking the car about a half block away, the four men entered the grounds and walked around. A resident, Shawn Brogan, came out of his cottage and saw three men prowling about. Vargas spoke to Brogan briefly, and Brogan then went into the main building of Southern House. Brogan reported the events he had seen to a counselor at Southern House and to another resident, Thomas Ira Miller. Miller went out of the main building to see what the men wanted. At this time, Vargas had entered Brogan's cottage and was stealing certain property within. Garcia, concerned that Miller would discover Vargas, came up beside Miller, unseen by him, and punched him. Miller fell down and lay still, and Garcia stood over him. Defendant then approached from some distance, withdrew a knife from a sheath, and stabbed the prone Miller once in the abdomen. Garcia, Vargas and defendant ran back to the car and met Hernandez, and the four men then drove away. Thomas Ira Miller died several hours later from the stab wound inflicted by defendant.

Defendant raises the following issues on appeal:

1. Whether defendant was denied the right to a speedy trial.

2. Whether defendant was denied the right to a representative jury.

3. Whether the admission of testimony that a wallet had been taken from the stabbing victim was grounds for a mistrial.

4. Whether the trial court committed reversible error in giving and refusing to give certain jury instructions.

5. Whether the death penalty should have been imposed.

6. Whether defendant was properly sentenced for both burglary and murder under a felony murder theory.

## SPEEDY TRIAL

Defendant's arraignment was on April 25, 1978. Pursuant to 17 A.R.S., Rules of Criminal Procedure, Rule 8.2(b), he was to be tried within ninety days of arraignment. Defendant was brought to trial on August 7, 1978, one hundred and four days after his arraignment. 17 A.R.S., Rules of Criminal Procedure, Rule 8.4, entitled "Excluded Periods," provides:

"The following periods shall be excluded from the computation of the time limits set forth in Rules 8.2 and 8.3:

"a. Delays occasioned by or on behalf of the defendant  *  *  *.

\*      \*      \*      \*      \*      \*

"e. Delays resulting from joinder for trial with another defendant as to whom the time limits have not run when there is good cause for denying severance. In all other cases, severance should be granted to preserve the applicable time limits."

On July 24, 1978, the trial was continued for seven days because of a conflict in defense attorney's trial schedule. This seven day period is excludable.

---

1. All references to Title 13, unless otherwise specified, are to the Arizona Criminal Code in effect prior to October 1, 1978.

On July 27, the trial court, upon the state's motion, entered an order excluding an additional seven days pursuant to Rule 8.4. The court found that on June 8, 1978, an order to change the trial judge had been issued, pursuant to the notice to change judge filed by a co-defendant, and although the order had indicated that some time should be excluded, no amount of time had then been specified. The court, on July 27, determined that, pursuant to the order of June 8, a reasonable amount of time should have been excluded and that seven days was reasonable.

Neither defendant nor his attorney was present at the July 27 hearing. A minute entry indicate that defendant's lawyer was in trial in another court and could not be present and that he had telephoned to "object to the Court's re-computing time in any way."

The defendant now contends that it was improper for the trial court to redetermine the Rule 8 time limits in his attorney's absence. The record shows, however, that on August 7, 1978, immediately before trial commenced, defendant's counsel was able to voice his objections to the redetermination of the time limits and to move for a dismissal under Rule 8.6. Counsel asserted that time should not have been excluded with respect to defendant, since the delay was caused by the notice of change of judge filed by a co-defendant and not by defendant, himself. The trial court denied the motion to dismiss.

■■ We find that any impropriety in the redetermination hearing on July 27, 1978, was cured by the proceedings on August 7. Moreover, the trial judge correctly denied defendant's motion to dismiss under Rule 8.6. Under the facts of this case the brief delay caused by one change of judge was properly attributed to defendant. 17 A.R.S., Rules of Criminal Procedure, Rule 8.4(e); *State v. Brown*, 112 Ariz. 401, 542 P.2d 1100 (1975).

Thus the seven day delay caused by a conflict in defendant's attorney's schedule and the seven day delay due to the change of judge were both properly excluded.

Subtracting fourteen days from the one hundred and four days between defendant's arraignment and trial, we find that the ninety day limit of Rule 8.2(b) was not violated.

## REPRESENTATIVE JURY

■ Defendant asserts, concededly without precedent, that the entire jury panel should have been stricken, because it contained no Mexican-Americans, and because the jury which was finally selected contained neither Mexican-Americans nor other minority group members. We find defendant's claim to be without merit. In the absence of a systematic exclusion of minority group members in the process of choosing a jury panel, which defendant does not allege, the failure of minority group members to appear on one particular panel does not support a challenge under the Sixth and Fourteenth Amendments to the United States Constitution. *State v. Lee*, 114 Ariz. 101, 559 P.2d 657 (1976).

## ADMISSION OF EVIDENCE THAT THE VICTIM'S WALLET HAD BEEN TAKEN

■ In the direct examination of Shawn Brogan, the prosecutor elicited testimony that Brogan had seen a wallet chained to the victim's belt loop about one-half hour prior to the stabbing but he had not seen the wallet on the victim's person immediately after the stabbing. The defense then moved for a mistrial, because this testimony could imply that the victim had been robbed, thus supporting a finding of murder in the perpetration of robbery, although defendant was not being tried for robbery.

One issue at trial was whether defendant participated in the burglary with which he was charged or was merely a knowing bystander. The admission of evidence that the victim's wallet was missing is justified, because it tended to prove defendant's intent to participate in the burglary. *See State v. Rose*, 121 Ariz. 131, 589 P.2d 5 (1978); 17A A.R.S., Rules of Evidence, Rule 404(b). If the jury believed that defendant took the wallet it would be less likely to

view him as a mere bystander rather than as an active participant in the burglary.

We note that the state, in its opening and closing arguments, based its felony murder theory on murder in the perpetration of burglary, not robbery. The court did not instruct the jury on robbery and confined its felony murder instruction to the perpetration of burglary.

## JURY INSTRUCTIONS

1. *Testimony of an accomplice.*

Defendant asserts that the trial court erroneously refused to give his requested instruction concerning the testimony of an accomplice. We cannot find this requested instruction in the record or in defendant's brief, and we are not aware of any necessary instruction concerning accomplices that the court omitted.[2]

2. *Testimony of a witness who has knowingly testified falsely.*

■ Defendant next claims that the trial court improperly refused to give a requested instruction concerning a witness who has knowingly testified falsely. The actual requested instruction has not been made a part of the record, and so we are required to speculate as to its exact content. Under these circumstances we are not able to rule as a matter of law whether the instruction should have been given or whether it was substantially covered by the other instructions given by the court to the jury. No error has been shown.

3. *Murder.*

Defendant next raises several objections to the trial court's instructions on murder. The court instructed as follows:

"Murder is the unlawful killing of a human being with malice.

"The thing that distinguishes murder from all other killings is malice. There are two kinds of malice. A person has one kind of malice when he deliberately intends to kill. If you determine that the defendant used a deadly weapon in the killing, you may find malice. If you determine that the defendant has no considerable provocation for the killing, you may find malice.

"There is also a second kind of malice. A person has this kind of malice if he shows a reckless disregard to human life.

"To constitute first degree murder the homicide must have been both deliberate and premeditated; but the law does not require that the thought of killing have been pondered for any specified period of time in order for the killing to be deliberate and premeditated.

"The period of time required for premeditation and deliberation is only that which is necessary for one thought to follow another.

"All other kinds of murder are second degree murder.

"If you have a reasonable doubt about which of the two degrees of murder was committed, you must decide it was second degree murder.

"You are instructed that if a human being is killed by any one of several persons engaged in the perpetration of, or attempt to perpetrate, the crime of burglary, all persons who either directly and actively commit the act constituting such crime or who knowingly and with criminal intent aid and abet in its commission or who advise and encourage its commission, are guilty of murder of the first degree whether the killing is intentional, unintentional or accidental."

Defendant first claims that the court committed error in refusing his requested instruction, which listed the elements of first degree murder. These elements that defendant wanted included are (a) unlawfulness of the killing, (b) malice, and (c) premeditation. It is clear that the above instructions did cover these elements.

Defendant also objects to the instruction on felony murder. The instruction that the court gave on killing in the perpetration of

2. We note that A.R.S. § 13–136, which required that an accomplice's testimony be corrobo-

rated, was repealed by Laws 1976, Ch. 116, § 1, effective June 24, 1976.

a felony was approved by this Court in *State v. Ferrari*, 112 Ariz. 324, 541 P.2d 921 (1975).

Defendant next contends that the court erred in failing to properly instruct the jury on the definition of premeditation. We need not consider whether the instruction unduly emphasized the brief time in which premeditation can occur. Where the jury was properly instructed on felony murder, the jury found defendant guilty of burglary, and the evidence strongly supports a finding of killing in the perpetration of the burglary, defendant could not have been prejudiced by any defect in the premeditation instruction. See *State v. Richmond*, 112 Ariz. 228, 540 P.2d 700 (1975); *State v. Serna*, 69 Ariz. 181, 211 P.2d 455 (1949), *cert. denied*, 339 U.S. 973, 70 S.Ct. 1031, 94 L.Ed. 1380 (1950).

Defendant further urges that the trial court erroneously instructed on malice as reckless disregard for human life, since the testimony only indicated that the killing was deliberate. Although the jury could have found malice based on a deliberate killing, defendant's conduct also manifested a reckless disregard for human life. Moreover, since the jury found that defendant was participating in a burglary, a finding of malice was not necessary to a guilty verdict on first degree murder. *See, Ferrari, supra*. Thus defendant could not have been prejudiced by a confusing instruction on malice. *Cf. Richmond* and *Serna, supra*.

4. *Flight.*

The court instructed as follows:

"Running away or hiding after a crime has been committed does not in itself prove guilt. You may consider any evidence of the defendant's running away or hiding together with all the other evidence."

Defendant maintains that the above instruction was improperly given, because there was no evidence of flight other than the fact that defendant left the scene of the crime. We note, however, that there was testimony that defendant ran from Southern House after the stabbing.

Our case law holds that merely leaving the scene of a crime is not evidence of flight. *State v. Ceja*, 113 Ariz. 39, 546 P.2d 6 (1976); *State v. Rodgers*, 103 Ariz. 393, 442 P.2d 840 (1968). This Court has said that a flight instruction can be given only if there is evidence of open flight, as upon pursuit, or if there is evidence of concealment. *State v. Smith*, 113 Ariz. 298, 552 P.2d 1192 (1976); *State v. Rodgers, supra.*

Defendant's manner of leaving the scene of the crime must reveal a consciousness of guilt. *State v. Bailey*, 107 Ariz. 451, 489 P.2d 261 (1971); *State v. Rodgers, supra*. Even without pursuit, defendant's manner of leaving may manifest consciousness of guilt. Running from the scene of a crime, rather than walking away, may provide evidence of a guilty conscience prerequisite to a flight instruction. *Cf. State v. Milton*, 15 Ariz.App. 392, 489 P.2d 55 (1971). We hold that where the evidence indicates that defendant and his accomplices ran away from the scene of a stabbing immediately after it occurred, an instruction on flight was not erroneous.

In addition to considering defendant's above claims, we have searched the record for fundamental error. A.R.S. § 13–4035(B) in the current Criminal Code. Finding no fundamental error, we affirm the judgment of conviction and proceed to consider defendant's claims that he was improperly sentenced.

## IMPOSITION OF THE DEATH PENALTY

Defendant claims that Arizona's death penalty statute is unconstitutional and that even if the statute is constitutional, it was incorrectly applied to this case. Because we agree with defendant's second contention, it is unnecessary to consider his first.

In its special verdict, following an aggravation/mitigation hearing as required by A.R.S. § 13–454, the trial court found that one aggravating circumstance existed and that there were no mitigating circumstances. The death sentence was, there-

fore, imposed. A.R.S. § 13–454(D). The aggravating circumstance found to exist was that defendant "committed the offense in an especially heinous, cruel, or depraved manner." A.R.S. § 13–454(E)(6).[3] Because of the extreme penalty, this Court must independently examine the record to determine if this aggravating circumstance exists. *State v. Richmond*, 114 Ariz. 186, 560 P.2d 41 (1976). We find that it does not.

This Court has reviewed the application of A.R.S. § 13–454(E)(6) in a number of cases. In *State v. Knapp*, 114 Ariz. 531, 543, 562 P.2d 704, 716 (1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978), we said:

> "The words 'heinous, cruel or depraved' have meanings that are clear to a person of average intelligence and understanding. Webster's Third New International Dictionary defines them as follows:
> "heinous: hatefully or shockingly evil: grossly bad
> "cruel: disposed to inflict pain esp. in a wanton, insensate or vindictive manner: sadistic.
> "depraved: marked by debasement, corruption, perversion or deterioration."

Moreover, it is important to emphasize that A.R.S. § 13–456(E)(6) requires that the killing be *especially* heinous, cruel or depraved. The manner in which the murder was committed must be such as to "set [defendant's] acts apart from the norm of first degree murder." *State v. Brookover*, 124 Ariz. 38, 601 P.2d 1322 (1979).

For a killing to be especially cruel, the perpetrator must senselessly or sadistically inflict great pain on his victim. An example of exceptional cruelty can be found in *State v. Knapp, supra*, where defendant set fire to the room in which his two infant daughters were asleep and caused them to be burnt to death. We find nothing in the record to establish that the victim suffered pain, and the commission of the offense in this case cannot, therefore, be considered especially cruel within the intent of A.R.S. § 13–454(E)(6).

In determining whether a murder has been committed in an especially heinous or depraved manner, we must necessarily consider the killer's state of mind at the time of the offense. This state of mind may be shown by his behavior at or near the time of the offense. Thus we have found those additional factors which make murder especially heinous or depraved where the killer not only shot to death the victim of a robbery but also shot two innocent bystanders, killing one, all for no discernible reason. *State v. Blazak*, 114 Ariz. 199, 560 P.2d 54 (1977), as discussed in *State v. Knapp, supra*, and *State v. Ceja*, 115 Ariz. 413, 565 P.2d 1274 *cert. denied*, 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). In *Knapp* we characterized the killing of the bystander in *Blazak*, as "particularly unnecessary and conscienceless." 114 Ariz. at 543, 562 P.2d at 716.

We have also considered acts done immediately after the actual killing to determine the murderer's mental state at the time of the killing. We have found an especially heinous or depraved manner of commission where the defendant murdered two victims in a "barrage of violence," continuing to shoot and abuse his victims even after he had killed them. *State v. Ceja*, 115 Ariz. at 417, 565 P.2d at 1278.

We have, however, held that first degree murder was not within the intent of A.R.S. § 13–454(E)(6) when the victim was shot in the back four times, once while lying helpless on the ground, as part of a shootout during a robbery. *State v. Watson*, 120 Ariz. 441, 586 P.2d 1253 (1978), *cert. denied*, 440 U.S. 924, 99 S.Ct. 1254, 59 L.Ed.2d 478 (1979). Similarly, in *State v. Brookover, supra*, we found that the murderer, who shot his victim twice in the back while stealing marijuana from him, did not act in such an exceptional manner as to make the killing especially heinous or depraved.

As was true in *Watson* and *Brookover*, we do not, in this case, find the killing to be set apart from the normal first degree

---

3.  In the current criminal code this aggravating factor is A.R.S. § 13–703(F)(6).

murder. The trial judge relied on the following factors: the helplessness of the victim; the lack of necessity for the killing to accomplish the defendant's plan to steal; and the magnitude of the wound inflicted demonstrating a clear intent to kill. We agree with the trial court that these factors existed, but we do not agree that they indicate that the killing was accomplished in an especially heinous or depraved manner.

We set aside the imposition of the death penalty, and we reduce defendant's sentence to life imprisonment without possibility of parole for twenty-five years. A.R.S. § 13–453.

## SENTENCING FOR BOTH BURGLARY AND FELONY MURDER

Defendant claims that he could not be sentenced for both burglary and felony murder which is based on a killing in the perpetration of a burglary. For this proposition he relies on A.R.S. § 13–1641,[4] which says that "[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under [either], but in no event under more than one." We have repeatedly held that A.R.S. § 13–1641 does not prohibit separate punishments in a situation like the present one. In *State v. Clayton*, 109 Ariz. 587, 514 P.2d 720 (1973), this Court said that burglary and murder in the perpetration of burglary are separate offenses of different natures and could be separately punished. *See also State v. Edwards*, 122 Ariz. 206, 594 P.2d 72 (1979); *State v. Collins*, 111 Ariz. 303, 528 P.2d 829 (1975).

Although we find that defendant was properly punished for both burglary and murder, we also find that the burglary sentence is ambiguous. Defendant was sentenced on September 15, 1978, as follows:

"It is ordered that on the conviction of burglary first degree that you be incarcerated in the Arizona State Prison for a period of not less than 14 years nor more than 15 years to date from September 8, 1978 [the date of the special verdict imposing the death penalty]. This sentence is to be consecutive to Count One sentence [death penalty]."

The burglary sentence cannot be consecutive to the murder sentence and begin on the same date. We vacate the burglary sentence and remand for resentencing to clarify whether it is to be concurrent with or consecutive to the murder sentence.

The judgment of conviction for murder and burglary are affirmed. The death penalty is set aside and modified to life imprisonment without possibility of parole for twenty-five years commencing September 8, 1978. The sentence for burglary is vacated and the case is remanded for resentencing in a manner consistent with this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and HOLOHAN, JJ., concurring.

---

4. Former A.R.S. § 13–1641, in effect when defendant was tried and sentenced, has been replaced by A.R.S. § 13–116 in the present Criminal Code. Defendant also says that the two sentences must be concurrent as required by the present A.R.S. § 13–116, but that statute became effective after defendant was tried and sentenced and is not applicable in this case.