944 P.2d 1204

STATE of Arizona, Appellee.

v.

Chad Alan LEE, Appellant.

No. CR–94–0237–AP.

Supreme Court of Arizona, En Banc.

Aug. 26, 1997.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section and Mona Peugh–Baskin, Assistant Attorney General, Phoenix, for Appellee.

Sandra Burt and Kathleen Mead, Phoenix, for Appellant.

## OPINION

JONES, Vice Chief Justice.

Chad Alan Lee (defendant) was convicted of kidnapping, sexual assault, armed robbery, theft, and two counts of first degree murder. He was sentenced to death for each of the murders and prison terms for the noncapital offenses. In separate proceedings, Lee was tried and convicted of a third murder; our disposition of that appeal is published separately. *State v. Lee,* 189 Ariz. 608, 944 P.2d 1222 (1997) (hereafter *Lee II* ).

This is an automatic appeal of the convictions and sentences pursuant to Rules 26.15 and 31.2, Arizona Rules of Criminal Procedure. We have jurisdiction under article VI, section 5(3), of the Arizona Constitution and A.R.S. § 13–4031. We affirm the convictions and sentences.

## FACTS

*Murder of Linda Reynolds*

On April 6, 1992, defendant and David Hunt called Pizza Hut from a pay phone and placed an order to be delivered to a vacant house. When Linda Reynolds arrived with the pizza order, defendant and Hunt confronted her with a rifle, forced her to remove her shorts and shirt, and abducted her. Defendant drove his Pontiac LeMans into the desert with Reynolds, and Hunt drove Reynolds' car to meet them.

Defendant removed the stereo from Reynolds' car and then destroyed the car by smashing the windows and various parts with a bat, puncturing the tires, and disabling the engine by cutting hoses and spark plug wires. Reynolds watched as one of the two, either defendant or Hunt, shot a bullet through the hood of her car. Defendant testified he destroyed Reynolds' car so that she could not escape.

Reynolds was forced to remove her pantyhose, socks, and shoes and to walk barefoot with Hunt in the desert north of her car where he raped her. Hunt then walked Reynolds back toward her car, where defendant forced Reynolds to perform oral sex on him.

After finding Reynolds' bank card in her wallet, defendant drove her and Hunt to Reynolds' bank to withdraw money from an automated teller machine (ATM). Defendant gave Reynolds his flannel shirt to wear, walked her to the ATM, and forced her to withdraw twenty dollars. Defendant and Hunt then drove Reynolds back to the desert north of where they had destroyed her car. Reynolds momentarily escaped, but Hunt found her and forced her back to the car. When she returned, her face and lips were bloody.

Defendant claimed that he and Hunt argued in front of Reynolds about whether to release her. Defendant testified that Hunt was opposed to releasing her because she would be able to identify them. Defendant stated that as he was escorting Reynolds away from Hunt, defendant shot her in the head as she attempted to take the gun from him. Further, defendant testified that he ran back to the car, got a knife, went back to Reynolds, and stabbed her twice in the left side of her chest to stop her suffering. Defendant returned to his car and drove away with Hunt.

On April 7, 1992, defendant pawned Reynolds' wedding ring, gold ring, and car stereo for a total of $170. He filled out a sales slip and used his driver's license as identification.

*Murder of David Lacey*

Shortly after midnight on April 16, 1992, nine days after the Reynolds murder, defendant called for a cab from a pay telephone at a convenience store. David Lacey's cab was dispatched, and he picked up defendant. Hunt, who had waited near the convenience store, drove defendant's car to the location where he and defendant intended to rob Lacey. When Lacey stopped the cab and turned around to get paid, defendant pulled out his revolver and demanded money. Defendant claimed that Lacey turned around and attempted to grab the gun. Defendant then fired nine shots, four of which hit Lacey. Defendant removed forty dollars from Lacey's pockets and dumped his body by the side of the road. With Hunt following, defendant drove the cab to a dirt road where he shot the cab's windows and tires and rifled

through its contents. Defendant's cigarette lighter and bloody fingerprint on a receipt were later found in the abandoned cab.

After hearing news reports that police had found distinctive shoeprints at the Reynolds and Lacey crime scenes, defendant drove to a forest north of Prescott and burned the shoes he had worn during both murders. At the same time, defendant burned and buried two .22 caliber rifles including one gun he used to shoot Reynolds. Defendant left the knife he used to stab Reynolds stuck into a tree at the same location.

### Investigation

Police began their investigation of Reynolds' disappearance the evening of April 6, 1992, at her last delivery site and found her body on April 7. They obtained videotape from the ATM that depicted a Pontiac LeMans with Reynolds sitting in the front passenger seat and also showed her at the ATM with defendant standing next to her.

A patrol officer who responded to two Lacey crime scenes noticed that the shoeprints found at both scenes matched a shoeprint he had seen on a flyer containing information about the Reynolds murder. Subsequently, the Phoenix Police Department, investigating the Reynolds murder, and the Maricopa County Sheriff's Department, investigating the Lacey murder, began a joint investigation because of striking similarities between the two crimes.

Pizza Hut provided police with information about past orders that included Hawaiian pizza similar to the last order delivered by Reynolds. One such order had been placed from the home of Hunt's stepmother. On May 1, 1992, Hunt's stepmother told police that Hunt and defendant had ordered Hawaiian pizza in the past and that she had recognized defendant's photograph in the newspaper. She gave police Hunt's father's address where police found Hunt, his father, and defendant. Defendant and Hunt agreed to provide police a sample of their fingerprints and did so that day. A few hours later, defendant, Hunt, and their girlfriends left town in defendant's car.

On May 3, 1992, at 4:00 p.m., defendant, Hunt, and their girlfriends were stopped by police in Oak Creek Canyon in connection with an armed robbery in Flagstaff. Defendant was advised of his *Miranda* rights and transported to the Flagstaff Police Department. That evening defendant was advised of his *Miranda* rights again and signed a waiver form.

Later that day, a palm print found on Reynolds' car was identified as belonging to Hunt. While attempting to alert law enforcement officers to detain defendant's car, police learned that it had been impounded in Flagstaff. Detectives from the Phoenix Police Department and the Maricopa County Sheriff's Department drove to Flagstaff to interview defendant and Hunt. On the way, the detectives received information that the bloody fingerprint found on the receipt in Lacey's cab matched defendant's print.

The detectives interviewed the girlfriends, then Hunt, and then defendant. In defendant's interview, which began at 2:45 a.m., May 4, after he was again read his *Miranda* rights, he confessed to robbing and murdering Reynolds and Lacey and told the detectives how and where he had disposed of the weapons. He offered to assist police officers in locating the weapons he used to murder Reynolds.

On May 5, 1992, a Phoenix Police detective met with defendant at the Coconino County Jail and again advised him of his *Miranda* rights. Defendant agreed to talk and then accompanied the police officers, directing them to the campsite where he had hidden a single-shot, sawed-off .22 caliber rifle and a semi-automatic .22 caliber rifle and left the knife in a nearby tree. Defendant told officers that he used the knife to stab Reynolds and the single-action rifle to shoot her. Defendant further confessed in detail about his involvement in both murders to the Phoenix Police detective and later to two other officers during transport back to Coconino County Jail.

On May 6, 1992, a Maricopa County Sheriff's Department detective reinterviewed defendant about the Lacey murder and robbery because the tape recorder had not functioned properly during the prior interview. On

tape, defendant waived his *Miranda* rights and retold how he planned the robbery and shot Lacey to death.

Finally, defendant testified at the trial and admitted that he made the pizza order, destroyed Reynolds' car, shot and stabbed Reynolds, and pawned her rings and stereo. Defendant also admitted that he called the cab and shot Lacey in the head. Further, defendant testified at trial that all statements he made to police officers were of his own free will, that he was advised of his *Miranda* rights, and that he told officers he understood his rights.

## PROCEDURAL HISTORY

The Maricopa County Grand Jury charged defendant with the following offenses:

(1) as to Linda Reynolds, first degree murder, kidnapping, two counts of sexual assault (sexual intercourse and oral sexual contact), armed robbery, and theft;

(2) as to David Lacey, first degree murder and armed robbery; and

(3) as to Harold Drury (*Lee II* ), first degree murder and armed robbery.[1]

Defendant filed multiple pretrial motions including motions to appoint second counsel and to close the court proceedings to the media, both of which were denied. The trial court granted defendant's motion to remand to the grand jury for redetermination of probable cause on the charge of sexual assault through sexual intercourse. Defendant was reindicted on sexual assault, alleging accomplice liability.

Defendant also filed a motion to suppress his statements, alleging that they were involuntary. Following a suppression hearing, the trial court denied defendant's motion, finding that he had been advised of his *Miranda* rights on at least five separate occasions by different police officers, that he understood his rights on each of those occasions, and that he knowingly, intelligently, and voluntarily waived those rights. The trial court also found that his statements

were made knowingly and voluntarily and were not the result of police misconduct.

Defendant filed a motion to sever the indictment into separate cases for each victim. The trial court granted his motion in part, severing the Reynolds and Lacey counts from the Drury counts.

On March 24, 1994, a jury found defendant guilty of all charged offenses related to Reynolds and Lacey. Jurors unanimously found defendant guilty of the premeditated and felony murder of Reynolds, and they unanimously found defendant guilty of the felony murder of Lacey.

After a sentencing hearing, the trial court sentenced defendant to consecutive, aggravated terms of imprisonment totaling 101 years for the noncapital convictions. For each of the murders, defendant was sentenced to death. In a special verdict, the trial court found the following aggravating circumstances under A.R.S. § 13-703(F) for both of the death sentences: F(1) previous death-eligible conviction, F(2) previous violent felony, and F(5) pecuniary gain. In addition, the court found under A.R.S. § 13-703(F)(6) that the Reynolds murder was especially cruel, heinous, and depraved and that the Lacey murder was depraved. As mitigating factors, the trial court acknowledged defendant's age, lack of significant prior criminal history, deprived childhood, cooperation with law enforcement officials and assistance in recovery of weapons, and remorse.

## ISSUES

Defendant has raised seven trial issues and various arguments pertaining to the death sentences. In addition, he has raised four miscellaneous issues previously rejected by this court.

### A. Trial Issues

#### 1. Denial of Severance of Reynolds and Lacey Counts

Defendant contends the trial court erred by partially denying his motion to sever. To

---

1. Defendant was tried and convicted separately for the murder and robbery of Harold Drury.

*See Lee II,* 189 Ariz. at 608, 944 P.2d at 1222.

justify reversal based on such error, this court must find the trial court clearly abused its discretion. *State v. Atwood*, 171 Ariz. 576, 612, 832 P.2d 593, 629 (1992).

■ Offenses are properly joined if they: "(1) Are of the same or similar character; or (2) Are based on the same conduct or are otherwise connected together in their commission; or (3) Are alleged to have been part of a common scheme or plan." Ariz. R.Crim.P. 13.3(a). A defendant is entitled as of right to sever offenses joined solely on the basis of Rule 13.3(a)(1). Ariz.R.Crim.P. 13.4(b). If a defendant is improperly denied severance, however, such error will not justify reversal if found to be harmless. *State v. Ives*, 187 Ariz. 102, 106, 109, 927 P.2d 762, 766, 769 (1996) (citing *State v. Stuard*, 176 Ariz. 589, 596–97, 863 P.2d 881, 888–89 (1993)). If the evidence would have been admissible at separate trials under Rule 404(b), Arizona Rules of Evidence, then the error is harmless, and a defendant will not receive a new trial. *Id.*

### a. Common Scheme or Plan

Defendant argues that the counts related to the two victims, Reynolds and Lacey, were improperly joined because none of the three conditions required by Rule 13.3(a) were met. Further, defendant argues that if the trial court found that the Reynolds and Lacey counts were of same or similar character under Rule 13.3(a)(1), the trial court erred in denying defendant's right to severance under Rule 13.4(b).

The trial court partially granted defendant's motion by severing counts related to the Drury murder from counts involving Reynolds and Lacey. In its ruling the trial court found that "the offenses charged in the Reynolds and Lacey deaths are of the same or similar character and also that they are alleged to have been part of a common scheme or plan." Under Rule 13.3(a)(3), if the trial court properly found the offenses were alleged to have been part of a common scheme or plan, defendant is not entitled to severance as of right.

■ "Common scheme or plan" as used in Rule 13.3(a)(3), Arizona Rules of Criminal Procedure, and as referenced in Rule 404(b), Arizona Rules of Evidence, must be a "particular plan of which the charged crime is a part." *Ives*, 187 Ariz. at 108, 927 P.2d at 768 (quoting *State v. Ramirez Enriquez*, 153 Ariz. 431, 432–33, 737 P.2d 407, 408–09 (App. 1987)). In *Ives*, this court held that "the inquiry should hereafter focus on whether the acts are part of an over-arching criminal plan, and not on whether the acts are merely similar." *Id.* at 109, 927 P.2d at 769. The *Ives* definition of "common scheme or plan" was adopted for use in all cases in which convictions had not become final (on direct appeal or by expiration of time for direct appeal) as of the date the opinion was filed, November 7, 1996, and therefore applies to this case. *See id.* at 107, 927 P.2d at 767.

■ Here, the trial court found the following similarities between the Reynolds and Lacey counts: (1) the murders occurred nine days apart, (2) both victims were killed by a .22 caliber weapon, (3) both victims were shot in the head, (4) both murders were motivated, at least in part, by a desire for money, evidenced by the armed robberies committed by defendant and Hunt, (5) both victims were employed in jobs requiring them to carry cash, (6) both victims conducted business by automobile and were called to the scene, (7) both victims' vehicles were vandalized, (8) both victims' bodies were found in the same geographical area, (9) similar shoeprints were found at both crime scenes, and (10) defendant admitted firing the gun in both murders. The trial court noted that the only substantial difference is that, unlike Lacey, Reynolds was stabbed in the chest in addition to being shot. The court's findings justify joinder of the Reynolds and Lacey counts under Rule 13.3(a)(1) as offenses "of same or similar character" but do not justify joinder under Rule 13.3(a)(3) as offenses alleged to have been part of a "common scheme or plan."

Under *Ives*, to decide whether the Reynolds and Lacey counts were part of a common scheme and plan, we must determine whether they were part of an over-arching criminal plan. *Id.* at 109, 927 P.2d at 769. Defendant testified that he and Hunt learned about the pizza delivery scam from one of

Hunt's neighbors and that they planned it a half-hour before they placed their order. Defendant also confessed to planning with Hunt to rob a taxi driver, but no testimony or evidence suggests that the two robberies were part of a single plan. Accordingly, because the record does not establish that the Reynolds and Lacey counts were part of a common scheme or plan as defined in *Ives*, we conclude that the counts were not properly joined under Rule 13.3(a)(3) and that the trial court abused its discretion by denying defendant's severance motion.

**b.** ***No Reversal Where Evidence of Other Counts Would Be Admissible at Separate Trials***

■ The trial court's error will not justify reversal if the evidence of other crimes would have been admissible at separate trials under Rule 404(b). *Ives*, 187 Ariz. at 106, 927 P.2d at 766. Admission of evidence of prior bad acts is controlled by four protective provisions: (1) the evidence must be admitted for a proper purpose under Rule 404(b); (2) the evidence must be relevant under Rule 402; (3) the trial court may exclude evidence if its probative value is substantially outweighed by the potential for unfair prejudice under Rule 403; and (4) the court must give an appropriate limiting instruction if requested under Rule 105. *State v. Mott*, 187 Ariz. 536, 545, 931 P.2d 1046, 1055, *cert. denied*, —— U.S. ——, 117 S.Ct. 1832, 137 L.Ed.2d 1038 (1997); *State v. Gulbrandson*, 184 Ariz. 46, 60, 906 P.2d 579, 593 (1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 2558, 135 L.Ed.2d 1076 (1996); *Atwood*, 171 Ariz. at 638, 832 P.2d at 655.

■ **(1) Proper Purpose.** Although evidence of other crimes is not admissible to prove the character of a person in order to show conforming action, it may be admissible for other purposes, such as proof of intent. Ariz.R.Evid. 404(b). Defendant claimed that he did not intend to kill either Reynolds or Lacey. He testified that while he was walking Reynolds away from Hunt, she tried to pull his gun away from him and then charged at him. Defendant testified that he shot Reynolds while she was running toward him. Similarly, defendant testified that he shot

Lacey to protect himself when Lacey turned and tried to grab the gun. In addition, the state argued that defendant intended to kill both Reynolds and Lacey to prevent identification. Defendant's intent was thus clearly contested, and determination of intent is a "proper purpose" for admission of other crimes under Rule 404(b). *See Ives*, 187 Ariz. at 109–10, 927 P.2d at 769–70.

**(2) Relevance.** All relevant evidence is admissible unless otherwise excluded by statute or rule. Ariz.R.Evid. 402. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R.Evid. 401. Additionally, we recently held that to be admissible in a criminal case the commission of prior bad acts by defendant must be shown by clear and convincing evidence. *State v. Terrazas*, 189 Ariz. 580, 944 P.2d 1194 (1997). Here, the clear and convincing standard was easily satisfied.

Defendant's testimony that he and Hunt discussed killing Reynolds to prevent identification makes it more probable that defendant killed Lacey to prevent identification. Further, defendant claims that on two separate occasions he was forced to shoot his robbery victims because they attacked him. The unlikeliness of this happening twice tends to show that neither shooting was accidental. *See State v. Hernandez*, 7 Ariz.App. 200, 203, 437 P.2d 952, 955 (1968) (reasoning that one incident "may have been accidental would be a likely possibility, but that two such instances were coincidental is substantially less likely"). Thus, defendant's statements describing the details of each of the murders are relevant to the other murder.

■ **(3) Rule 403 Weighing.** Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Ariz.R.Evid. 403. Evidence that defendant committed a second armed robbery and murder would likely be harmful to the defendant, but not all harmful evidence is unfairly prejudicial. *See Mott*, 187 Ariz. at 545–46, 931 P.2d at 1055–56. "Unfair prejudice results if the evidence

has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror." *Id.* (citing *State v. Schurz*, 176 Ariz. 46, 52, 859 P.2d 156, 162 (1993)). In this case, on several occasions, defendant confessed that he intentionally robbed and that he killed both victims, and his confessions were corroborated by physical evidence. Although both murders were violent, the record does not suggest that the jury's decisions were improperly influenced by emotion or horror.

■ Further, defendant's argument that the trial court's refusal to sever the counts prevented him from testifying about the Reynolds counts while remaining silent regarding the Lacey counts does not reach the level of specificity necessary to require severance. *See Atwood*, 171 Ariz. at 613, 832 P.2d at 630 ("He must show 'that he has both important testimony to give on some counts and strong reasons for not testifying on others.' ") (quoting *State v. Comer*, 165 Ariz. 413, 419, 799 P.2d 333, 339 (1990)). In his severance motion, defendant acknowledged this requirement and indicated that this necessary showing would be made at the motion hearing. At the hearing, defense counsel submitted defendant's affidavit stating he wanted to testify that he did not intend to murder Reynolds, that he kept the rifle to prevent Hunt from shooting her, that he disabled Reynolds' car to prevent her from following them, and that he walked her toward lights, attempting to lead her toward assistance. Defendant also stated he would testify that the rifle discharged when Reynolds "grabbed and jostled for control over the rifle." This is clearly important testimony relevant to the Reynolds counts.

■ In his affidavit, however, defendant did not provide convincing reasons for not testifying regarding the other counts. He stated: "Should I testify at a trial joined with the other offenses, I will be required to answer questions about the other murders for which I am charged. I have no testimony to offer on those crimes. Any answers to questions would be incriminating." We note that most criminal defendants who have confessed to multiple crimes would have these same reasons for not testifying. "Where

joinder of counts is proper, the fifth amendment is not violated by the fact that the defendant must elect to testify on all or none of the counts." *Comer*, 165 Ariz. at 419, 799 P.2d at 339. Rule 403 thus would not require that relevant evidence regarding the Lacey counts be excluded in a trial on the Reynolds counts and vice versa.

■ **(4) Limiting Instruction.** Instructions may prevent a jury's guilt determination on one charge from influencing the jury's guilt determination on another charge. *Atwood*, 171 Ariz. at 613, 832 P.2d at 630. "[A] defendant is not prejudiced if the jury is (1) instructed to consider each offense separately, and (2) is advised that each offense must be proven beyond a reasonable doubt." *Id.* (citing *Comer*, 165 Ariz. at 419, 799 P.2d at 339). When evidence that is admissible for one purpose but not for another is admitted, upon request, the court shall instruct the jury to restrict the evidence to its proper scope. Ariz.R.Evid. 105.

■ The trial court here instructed the jury that the state must prove each element of the charges beyond a reasonable doubt. The court also instructed the jury regarding the twelve verdict forms, each of which specified a charge and the victim to which it related. Further, defense counsel did not request a more specific jury instruction on the limited admissibility as necessary to preserve the alleged error for appeal. *See State v. Roscoe*, 184 Ariz. 484, 491, 910 P.2d 635, 642 (holding that trial court's failure *sua sponte* to give limiting instruction was not fundamental error), *cert. denied*, —— U.S. ——, 117 S.Ct. 150, 136 L.Ed.2d 96 (1996); *State v. Taylor*, 127 Ariz. 527, 529, 622 P.2d 474, 476 (1980).

Accordingly, if the trial court had severed the Reynolds and Lacey counts, evidence of each would have been mutually admissible. The trial court's error in finding a common scheme or plan as a basis for denying defendant's severance motion was thus harmless and does not justify reversal.

## 2. Voluntariness of Defendant's Statements

■ Defendant claims that the trial court abused its discretion by ignoring his physical

and mental condition at the time of the May 4, 1992 interrogation in Flagstaff. Defendant claims that at the 2:45 a.m. interview he was exhausted and disoriented because of the time of night, because police had disturbed his sleep by checking on him, and because he had not slept well while camping the previous two nights. He further claims that his will was overborne by the interrogating officers because he has attention deficit disorder and quickly succumbs to authority figures, a tendency he argues had been substantiated by psychological testing.

 To determine the voluntariness of a statement, the appropriate inquiry is whether, under the totality of the circumstances, the statement was the product of coercive police tactics. *State v. Tucker,* 157 Ariz. 433, 445–46, 759 P.2d 579, 591–92 (1988) (citing *Colorado v. Connelly,* 479 U.S. 157, 167, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986)). "The trial court's determination that a confession was voluntary will not be disturbed on appeal absent clear error." *Id.* at 444, 759 P.2d at 590.

The trial court conducted a suppression hearing and found that defendant had been advised of his *Miranda* rights on at least five separate occasions by different police officers, that he understood his rights on each of those occasions, and that he knowingly, intelligently, and voluntarily waived those rights. The trial court also found that his statements were knowingly and voluntarily made and were not given as a result of police misconduct. These findings are not only supported by testimony of police officers, but also by defendant's testimony at trial that all statements he made to police officers were of his own free will, that he was advised of his *Miranda* rights, and that he told officers he understood his rights. The record does not suggest that police tactics were coercive. We find no clear error in the trial court's denial of defendant's motion to suppress his statements.

### 3. Appointment of Second Counsel

 Defendant argues that the trial court erred by denying his application for the appointment of a second attorney because of the numerous serious charges. In its denial, the trial court stated that defendant's counsel "may make application for paralegal or law student assistance for research purposes."

Although we have recently adopted a rule requiring appointment of two attorneys in capital cases, it does not become effective until January 1, 1998. Ariz.R.Crim.P. 6.2 (amended June 25, 1997). Further, defendant has not identified specific examples of prejudice resulting either from ineffective or from an insufficient number of counsel. We conclude, therefore, that the trial court did not abuse its discretion in denying defendant's request for a second attorney.

### 4. Proceedings Open to the Media

 Defendant argues that the trial court erred when it denied his motion to close pretrial and trial proceedings to the media. Defendant claims he was denied his right to a fair trial because of media publicity but provides no specific examples either of inherently prejudicial publicity or of actual prejudice.

 All court proceedings shall be open to the public, including the news media, "unless the court finds, upon application of the defendant, that an open proceeding presents a clear and present danger to the defendant's right to a fair trial by an impartial jury." Ariz.R.Crim.P. 9.3(b). "Clear and present danger means that the substantive evil must be extremely serious and the degree of imminence extremely high." *Phoenix Newspapers Inc. v. Jennings,* 107 Ariz. 557, 560, 490 P.2d 563, 566 (1971); *see also Atwood,* 171 Ariz. at 633, 832 P.2d at 650. The trial court has broad discretion in permitting electronic and photographic coverage of public judicial proceedings. Ariz.R.Sup.Ct. 122.

The trial court denied defendant's motion for closure of electronic and photographic coverage of the proceedings,[2] finding that "because of the passage of time in this case, publicity has been virtually wiped out." Defendant has not provided any evidence of pervasive, inflammatory publicity that would be presumptively prejudicial. Defendant did

---

**2.** In oral argument defense counsel expanded his motion to exclude all newspaper coverage.

not object to the jury panel based on media exposure. Defendant has not identified specific evidence that jurors formed preconceived notions about his guilt, nor has he shown any actual prejudice resulting from publicity.

Defendant has not shown that an open proceeding presented a clear and present danger to his right to a fair trial by an impartial jury, and we conclude that the trial court did not err by denying his motion to close proceedings.

### 5. *"Wussler*-Type" Instruction for Lesser Included Offenses

■ Defendant asks this court to reconsider the instruction approved in *State v. Wussler* requiring juries to agree that a defendant was not guilty of the greater charge before considering the lesser included charge. 139 Ariz. 428, 679 P.2d 74 (1984), *overruled by State v. LeBlanc*, 186 Ariz. 437, 924 P.2d 441 (1996). Recently, in *LeBlanc*, this court overruled *Wussler*:

> It now appears that requiring a jury to do no more than use reasonable efforts to reach a verdict on the charged offense is the better practice and more fully serves the interests of justice and the parties. Under this method, jurors may render a verdict on a lesser-included offense if, after full and careful consideration of the evidence, they are unable to reach agreement with respect to the charged crime. Thus, the jury may deliberate on a lesser offense if it either (1) finds the defendant not guilty on the greater charge, or (2) after reasonable efforts cannot agree whether to acquit or convict on that charge.

186 Ariz. at 438, 924 P.2d at 442. Our decision in *LeBlanc*, however, having been filed subsequent to the crimes charged here, does not apply to this case:

> Although today's decision directs trial courts to abandon the *Wussler* rule in favor of a "reasonable efforts" instruction, we remain persuaded that the acquittal-first requirement does not violate the United States or Arizona Constitutions. Moreover, the giving of a *Wussler*-type in-

struction does not rise to the level of fundamental error.

> Finally, because the change we make today is procedural in nature, adopted for purposes of judicial administration, its application is prospective only.

*Id.* at 439–40, 924 P.2d at 443–44 (citations omitted). Courts commenced using a "reasonable efforts" instruction no later than January 1, 1997. *Id.* at 440, 924 P.2d at 444.

Because this case was tried in 1994, we find that the trial court did not err by giving an "acquittal first" jury instruction regarding lesser-included offenses consistent with *Wussler*.

### 6. Refusal to Limit Cross–Examination of Defendant at Sentencing Hearing

■ Defendant argues that the trial court erred by denying his motion to limit the state's cross-examination of him "to certain specific background information" at the sentencing hearing. In order to avoid cross-examination related to the crimes, defendant did not testify in person at his sentencing for the Reynolds and Lacey convictions, but submitted instead a transcript of his deposition.[3] He claims that denial of his motion to limit cross-examination prevented the court from considering all mitigating evidence and that the court could not consider his demeanor without live testimony. In addition, defendant argues that refusal to limit cross-examination abrogated his Fifth Amendment right to remain silent and to refuse to make self-incriminating statements.

■ Rule 611(b), Arizona Rules of Evidence, provides that a witness may be cross-examined on any relevant matter. In addition, A.R.S. § 13–117(A) states:

> A defendant in a criminal action or proceeding shall not be compelled to be a witness against himself, but may be a witness in his own behalf. If he offers himself as a witness in his own behalf, he may be cross-examined to the same extent and subject to the same rules as any other witness.

---

**3.** Defendant did testify, however, at trial.

A criminal defendant's right to testify on his own behalf "does not include the unqualified right to have brought out on cross-examination only those facts which are favorable to his case." *State v. King,* 110 Ariz. 36, 39, 514 P.2d 1032, 1035 (1973).

Therefore, defendant had no right to place limits on how he would be cross-examined. Further, we find no evidence that defendant's live testimony about a deprived childhood would have established greater weight for such deprivation as a mitigating circumstance.

### 7. Sufficient Evidence to Support Sexual Assault Conviction

■ Defendant argues that the trial court erred when it denied his motion for judgment of acquittal on the count of sexual assault of Reynolds as Hunt's accomplice. The court was required to enter the judgment of acquittal if no substantial evidence warranted conviction. Ariz.R.Crim.P. 20(a); *State v. Hill,* 174 Ariz. 313, 318, 848 P.2d 1375, 1380 (1993). " 'Substantial evidence' is evidence that reasonable persons could accept as adequate and sufficient to support a conclusion of the defendant's guilt beyond a reasonable doubt." *State v. Jones,* 125 Ariz. 417, 419, 610 P.2d 51, 53 (1980). When reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal. *State v. Landrigan,* 176 Ariz. 1, 4, 859 P.2d 111, 114 (1993).

■ When the evidence supporting a verdict is challenged on appeal, an appellate court will not reweigh the evidence. The court must view the evidence in the light most favorable to sustaining the conviction, and all reasonable inferences will be resolved against a defendant. *State v. Tison,* 129 Ariz. 546, 552, 633 P.2d 355, 361 (1981).

■ In order to prove defendant's guilt as an accomplice, the state must prove that, with intent to promote or facilitate the commission of an offense, defendant either (1) solicited or commanded Hunt to commit the offense; (2) aided, counseled, or agreed to aid or attempted to aid Hunt in planning or committing the offense; or (3) provided means or opportunity for Hunt to commit the offense. *See* A.R.S. § 13–301. Circumstantial evidence without explicit statements of intent may be sufficient to support a conviction for sexual assault as an accomplice. *See State v. Swoopes,* 155 Ariz. 432, 434, 747 P.2d 593, 595 (App.1987).

Defendant claims that he was removing Reynolds' stereo from her car and vandalizing the car while Hunt sexually assaulted her. He states that he did not know that the assault occurred until Hunt told him later. He further argues that the circumstantial evidence of a shoeprint similar to his near a mattress is not sufficient to convict him as an accomplice.

The state presented evidence that defendant provided means or opportunity by assisting in kidnapping Reynolds and forcing her to undress and by providing the gun and transportation. The state also presented evidence from which a jury could infer that defendant aided or agreed to aid Hunt in the sexual assault. Defendant forced Reynolds to undress at the pizza delivery site, dragged a mattress down a hill to where she and Hunt were standing, and did not release her when, as he testified at trial, he had many opportunities to do so. Evidence that Reynolds' pantyhose were found on top of a smashed tail light indicates that defendant, by his own admissions as to the sequence of events, was present when Reynolds was forced to remove her shoes, socks, and pantyhose before Hunt took her into the desert and assaulted her.

We find, therefore, that the state presented substantial evidence warranting conviction, and the trial court had no discretion to enter a judgment of acquittal contrary to the jury verdict.

### B. Sentencing Issues

■ When a death sentence is imposed, this court determines independently whether the aggravating circumstances have been proven beyond a reasonable doubt, considers any mitigating circumstances, and then weighs the aggravating and mitigating circumstances, deciding whether the mitigating circumstances are sufficiently substantial to

call for leniency. *State v. Stokley,* 182 Ariz. 505, 516, 898 P.2d 454, 465 (1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 787, 133 L.Ed.2d 737 (1996) (citing *State v. Brewer,* 170 Ariz. 486, 500, 826 P.2d 783, 797 (1992)); A.R.S. § 13–703.01.[4]

### 1. Aggravating Circumstances

#### a. Finding That Defendant Had Been Convicted of Another Offense for Which a Sentence of Life Imprisonment or Death Could Be Imposed

■ Defendant claims that the trial court erred by finding the A.R.S. § 13–703(F)(1) aggravating circumstance for the Reynolds murder based on the simultaneous conviction for the Lacey murder because he had not murdered Lacey at the time he murdered Reynolds. This court has previously rejected this argument and does so here. *See State v. Gretzler,* 135 Ariz. 42, 57 n. 2, 659 P.2d 1, 16 n. 2 (1983).

In *Gretzler,* this court explained:

We have held that our death penalty statute is not a recidivist or enhancement statute, the purpose of which is to serve as a warning to convicted criminals and encourage their reformation. Rather, "[w]e have stated that the 'purpose of an aggravation/mitigation hearing is to determine the character and propensities of the defendant....'" Convictions entered prior to a sentencing hearing may thus be considered regardless of the order in which the underlying crimes occurred or the order in which the convictions were entered.

*Id.* (citations omitted); *see also State v. Walden,* 183 Ariz. 595, 615–16, 905 P.2d 974, 994–95 (1995) (holding that for purposes of A.R.S. § 13–703(F)(1), conviction occurs upon determination of guilt), *cert. denied,* —— U.S. ——, 116 S.Ct. 1444, 134 L.Ed.2d 564 (1996); *State v. Williams,* 183 Ariz. 368, 382–83, 904 P.2d 437, 451–52 (1995) ("[V]alidity of the trial court's (F)(2) finding is unaffected by the fact that the convictions were simultaneous or by the fact that the armed robbery occurred after the murder.").

The trial court thus properly found an (F)(1) aggravating circumstance for the Reynolds murder based on the Lacey murder conviction.

#### b. Finding That Defendant Had Been Previously Convicted of a Felony Involving the Threat or Use of Violence

■ Defendant claims that the trial court erred by finding the A.R.S. § 13–703(F)(2) aggravating circumstance based on convictions for offenses that occurred after the murders. The trial court based its (F)(2) finding on defendant's Coconino County convictions for aggravated robbery and aggravated assault, crimes that defendant committed after the murders, but for which he was convicted before the murder convictions.

This court's holding in *Gretzler* applies to prior convictions as well as simultaneous convictions. 135 Ariz. at 57 n. 2, 659 P.2d at 16 n. 2. A sentencing court may consider any convictions entered previously without regard to the order of the underlying crimes. *Id.; see also Walden,* 183 Ariz. at 615–16, 905 P.2d at 994–95; *Williams,* 183 Ariz. at 382–83, 904 P.2d at 451–52.

Section 13–703(F)(2) requires the sentencing court to consider as an aggravating circumstance that "defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person."[5] To satisfy (F)(2), the prior conviction must be a felony that by its statutory definition involves violence or the threat of violence on another person. *State v. McKinney,* 185 Ariz. 567, 581, 917 P.2d

---

4. In addition to the aggravating circumstances challenged by defendant, the trial court found that the murder of Linda Reynolds was especially cruel, heinous, and depraved under A.R.S. § 13–703(F)(6) and that the murders of both Reynolds and David Lacey were committed for pecuniary gain under A.R.S. § 13–703(F)(5). Although defendant does not challenge these findings on appeal, the court has nevertheless reviewed the evidence on these as well as on the aggravating circumstances that defendant does challenge.

We have included the (F)(5) and (F)(6) factors in our independent reweighing of all aggravating and mitigating circumstances to determine the propriety of the death sentences imposed by the trial court.

5. Although the statute has been amended, this is the wording that was in effect when Lee committed these murders.

1214, 1228, *cert. denied,* —— U.S. ——, 117 S.Ct. 310, 136 L.Ed.2d 226 (1996); *State v. Romanosky,* 162 Ariz. 217, 228, 782 P.2d 693, 704 (1989); *State v. Gillies,* 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983).

In 1992 defendant was convicted of aggravated robbery, a class 3 felony, in violation of A.R.S. §§ 13–1902 and –1903, and aggravated assault, a class 3 dangerous felony, in violation of A.R.S. §§ 13–1203(A)(2) and –1204(A)(2). Robbery, as defined in section 13–1902, involves threat or use of force. Section 13–1203(A)(2) defines assault as "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury," and section 13–1204(A)(2) requires use of a deadly weapon or dangerous instrument. Therefore, the statutory definitions of both convictions necessarily involve violence or the threat of violence.

Accordingly, the trial court properly found an (F)(2) aggravating circumstance for both the Reynolds and Lacey murders based on the Coconino County convictions for aggravated robbery and aggravated assault.

### c. *Finding That the Lacey Murder Was Committed in a Depraved Manner*

Defendant argues that the trial court erred by finding the A.R.S. § 13–703(F)(6) aggravating circumstance of depraved manner of killing, based solely on a finding of senselessness. The special verdict stated:

> [T]he court *does* find that the murder of David Lacey was depraved in that it was senseless. One shot would have disabled the victim if one puts any credence into defendant's story. But the fact that there were four shots, one of which was a "hard contact" wound and that the robbery could have been accomplished without killing Mr. Lacey shows a total lack of regard for human life. This is especially so when it came within nine days of the murder of Linda Reynolds.

(Emphasis supplied.)

 This court has defined depraved as "marked by debasement, corruption, perversion or deterioration." *State v. Mata,* 185 Ariz. 319, 324, 916 P.2d 1035, 1040, *cert. denied,* —— U.S. ——, 117 S.Ct. 20, 135 L.Ed.2d 1114 (1996). In addition, we have identified specific factors that may lead to a finding of depravity: apparent relishing of the murder by the killer, infliction of gratuitous violence on the victim, needless mutilation of the victim, senselessness of the crime, and helplessness of the victim. *Gretzler,* 135 Ariz. at 51–52, 659 P.2d at 10–11. We will reverse an (F)(6) finding where no specific factors, such as those identified, separate the crime from the norm of first degree murders. Either or both senselessness and helplessness, considered together with other circumstances present in a particular case, may lead to the conclusion that an offense was heinous or depraved. In isolation, however, a finding of senselessness or helplessness need not always lead to a holding that the crime is depraved. *Id.* at 52–53, 659 P.2d at 11–12. In fact, senselessness and helplessness ordinarily are not sufficient to prove heinousness or depravity. *State v. Miles,* 186 Ariz. 10, 18, 918 P.2d 1028, 1036 (1996).

The state argues that the *Gretzler* requirement of other circumstances in addition to senselessness is satisfied because the special verdict implied a finding of gratuitous violence by mentioning four shots. The trial court referred to four shots in the context of senselessness and did not explicitly identify gratuitous violence as an additional circumstance. The record does not establish the amount of time between the gunshots or the order in which they were fired, and therefore the facts do not clearly establish violence beyond that necessary to kill. *See, e.g., State v. Lacy,* 187 Ariz. 340, 354, 929 P.2d 1288, 1302 (1996) (when medical testimony did not establish which of three shots was fatal, court could not determine if injuries were inflicted beyond those necessary to cause death).

 In order to decide whether a senseless murder is especially depraved, however, a trial judge must consider more than the categories provided by *Gretzler.* "[J]ustice cannot be reduced to a theorem." *Mata,* 185 Ariz. at 326, 916 P.2d at 1041. In order to determine whether a defendant's actions demonstrate a vile state of mind at the time of the murder, a trial judge must examine "the factual differences between *Tison, Ortiz,* and *Clark* [cases finding heinousness and

depravity] on the one hand, and *Lujan* and *Blazak* [cases where heinousness and depravity finding was reversed] on the other." *Id.* at 326–27, 916 P.2d at 1041–42.

*Tison, Ortiz,* and *Clark* provide three examples of heinousness and depravity. In *State v. Tison,* this court stated:

> The senselessness of the murders, given the inability of the victims to thwart the escape, especially in such an isolated area, and the fact that a young child, less than two years old, who posed no threat to the captors, was indiscriminately shot while in the arms of his mother, compels the conclusion that the actual slayers possessed a shockingly evil state of mind. Less violent alter-natives which would have served their purposes in preventing their detection by the authorities were obviously available. But they chose to slaughter an entire family and [their niece].

129 Ariz. 526, 543, 633 P.2d 335, 352 (1981).

In *State v. Ortiz,* the defendant inflicted multiple stab wounds in the victim's neck and chest areas and left the victim lying on the floor in the living room where he stabbed the victim's two young daughters. He then poured gasoline on the victim and around the exits, placed a delayed ignition device at the foot of the victim's baby's bed, and ignited the gasoline, leaving the victim and her three children in the burning home. 131 Ariz. 195, 210, 639 P.2d 1020, 1035 (1981).

In *State v. Clark,* the defendant killed a seventeen-year-old friend, a sleeping co-worker, and a husband and wife who had provided him with work and a home for a year. The defendant kept a spent bullet as a souvenir of his crime and later commented, "You should have seen Charley when I hit him with those cutters." 126 Ariz. 428, 437, 616 P.2d 888, 897 (1980). This court found that the evidence demonstrated that the defendant was "totally without regard for human life" and fully supported finding that the murders had been committed in an especially depraved manner. *Id.*

This court identified *Lujan* and *Blazak* as examples of cases where the finding of heinousness and depravity was not supported by the factual evidence. *Mata,* 185 Ariz. at 326, 916 P.2d at 1042.

In *State v. Lujan,* we found that the following factors existed but did not indicate that the killing was accomplished in an especially heinous or depraved manner: "the helplessness of the victim; the lack of necessity for the killing to accomplish the defendant's plan to steal; and the magnitude of the wound inflicted demonstrating a clear intent to kill." 124 Ariz. 365, 373, 604 P.2d 629, 637 (1979). Lujan had stabbed the victim once in the abdomen after he had been hit, had fallen down, and was lying still. *Id.* at 368, 604 P.2d at 632.

In *State v. Blazak,* this court reversed the trial court's finding of heinousness and depravity where the defendant fatally shot a bartender and a nearby patron and wounded a third person during an attempted robbery. 131 Ariz. 598, 600, 604, 643 P.2d 694, 696, 700 (1982). Blazak shot the bartender four times. *State v. Blazak,* 114 Ariz. 199, 200, 560 P.2d 54, 55 (1977) (denial of post-conviction relief affirmed by *Blazak,* 131 Ariz. at 605, 643 P.2d at 701). A quick succession of gunshots during a robbery does not present the unique or limited circumstances in which senselessness and helplessness will establish heinousness or depravity. *State v. Soto–Fong,* 187 Ariz. 186, 207, 928 P.2d 610, 631 (1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1826, 137 L.Ed.2d 1033 (1997).

In this case, defendant fired nine shots, hitting Lacey four times, during a robbery. These circumstances are more like those of *Lujan* and *Blazak* than those of *Tison, Ortiz,* and *Clark.* We find no special circumstances in addition to the finding of senselessness that would justify concluding the manner of Lacey's murder was especially depraved. We therefore reverse the trial court's finding of the aggravating circumstance of depravity under A.R.S. § 13–703(F)(6) for the Lacey murder.

## 2. Mitigating Circumstances

The trial court must consider all evidence offered in mitigation but is not bound to accept all such evidence as mitigating. *State v. Ramirez,* 178 Ariz. 116, 131,

871 P.2d 237, 252 (1994). In its consideration, the trial court must make two determinations: (1) whether defendant proved the circumstance by a preponderance of the evidence and, if so, (2) whether this circumstance in some way is mitigating. If it is, "the court should consider each mitigating circumstance *individually* and all mitigating circumstances *cumulatively* when weighing the mitigating and aggravating factors." *Id.* (Emphasis supplied.)

Here, the trial court found five mitigating factors in each of the murders: age, lack of any significant prior criminal history, deprived childhood, cooperation with law enforcement officials and assistance in recovery of weapons, and remorse. In addition, defendant argues that the trial court should have considered the fact that he was a follower and that he was kind, caring, and steadily employed until he became involved with Hunt. Defendant claims that he "became involved with people and situations that he did not have the ability to control.... He got caught up in an aberrant lifestyle and could not disentangle himself." He further asks this court to give greater weight to his deprived childhood, when he was shuttled between "his emotionally absent family and kind neighbors."

This court finds that the trial court properly rejected defendant's claim that he was merely a follower when he was armed with his own weapons in both murders, initiated both robberies by making the phone calls, pulled the trigger in both murders, and stabbed Reynolds. Further, defendant has failed to establish a nexus between his deprived childhood and his crimes. Upon independent review of all mitigation evidence offered by defendant, this court finds no mitigating circumstances beyond those found by the trial court.

### 3. Summary of Findings on Aggravation and Mitigation

We have independently weighed the aggravating and mitigating circumstances related to each death sentence imposed on the defendant. *See Stokley,* 182 Ariz. at 516, 898 P.2d at 465.

For the murder of Linda Reynolds, we find that the state proved beyond a reasonable doubt the aggravating circumstances of previous death eligible conviction, previous violent felony, pecuniary gain, and that the murder was committed in an especially cruel, heinous, and depraved manner.

For the murder of David Lacey, we find that the state proved beyond a reasonable doubt the aggravating circumstances of previous death eligible conviction, previous violent felony, and pecuniary gain.

For each of the murders, we find that (1) defendant has proved by a preponderance of the evidence the mitigating circumstances of defendant's age, lack of significant prior criminal history, deprived childhood, cooperation with law enforcement officials and assistance in recovery of weapons, and remorse; and (2) the mitigating circumstances are not sufficiently substantial, taken either separately or cumulatively, to call for leniency.

### C. Miscellaneous Issues

Defendant raises the following arguments to preserve his right to further review at a future time. The court has rejected them previously and rejects them here.

1. The sentencing court erred when it considered victim impact evidence in sentencing. *See State v. Spears,* 184 Ariz. 277, 292, 908 P.2d 1062, 1077, *cert. denied,* —— U.S. ——, 117 S.Ct. 393, 136 L.Ed.2d 308 (1996).

2. Under the doctrine of equal protection, defendant had the right to a jury trial at his sentencing hearing. *See id.* at 291, 908 P.2d at 1076.

3. Death by lethal gas constitutes cruel and unusual punishment. *See id.*

4. Arizona's statutory scheme for imposition of the death penalty is unconstitutional. *See Walton v. Arizona,* 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990).

### DISPOSITION

Upon full review, we affirm defendant's convictions and sentences.

ZLAKET, C.J., and FELDMAN, MOELLER and MARTONE, JJ., concur.