NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ERICH LEE WINTERTON, *Appellant.*

No. 1 CA-CR 13-0291

FILED 08-14-2014

Appeal from the Superior Court in Mohave County
No. S8015CR201101043
The Honorable Derek C. Carlisle, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Colby Mills
*Counsel for Appellee*

Mohave County Legal Advocate's Office, Kingman
By Jill L. Evans
*Counsel for Appellant*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Patricia K. Norris and Judge Kent E. Cattani joined.

**W I N T H R O P**, Judge:

**¶1**        The State charged Erich Lee Winterton ("Appellant") with one count of attempted first degree murder, two counts of aggravated assault, and one count of criminal damage.  The charges arose from a September 8, 2011 incident in which Appellant allegedly attacked Larry E.[1] and Dustin S. with a baseball bat and damaged Larry's property.[2]  A jury convicted Appellant of one count of aggravated assault committed against Larry, a class three felony, but acquitted Appellant of the remaining charges.  On appeal, Appellant argues that (1) the trial court abused its discretion when it admitted other act evidence of his prior attack on Lora J., a resident in Larry's house, and (2) the trial court erred in finding the aggravated assault was a dangerous offense without submitting the question to the jury.  This court has jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (West 2014),[3] 13-4031, and 13-4033.  For the reasons set forth below, we affirm.

## ANALYSIS

### I.        Prior Act Evidence

**¶2**        Larry owned a house, where he lived and rented out rooms to tenants.  During August and September 2011, Larry had three tenants, who lived in separate rooms:  (1) Dustin, (2) Lora, Appellant's former fiancée, and (3) Moneytha Burns, Appellant's girlfriend, who lived in the home from approximately May to September that year.  Appellant did not live in Larry's house.

**¶3**        Approximately one month before the attack in this case, Appellant and Moneytha unexpectedly entered Lora's bedroom and attacked Lora.  According to Lora, Appellant grabbed her by the throat and

---

[1]        In this case, we use the first initial of the victims' last names to protect their privacy as victims.  *See State v. Maldonado*, 206 Ariz. 339, 341 n.1, ¶ 2, 78 P.3d 1060, 1062 n.1 (App. 2003).

[2]        We view the facts in the light most favorable to sustaining the verdict and resolve all reasonable inferences against Appellant.  *See State v. Nihiser*, 191 Ariz. 199, 201, 953 P.2d 1252, 1254 (App. 1997).

[3]        We cite the current version of the statutes unless changes material to our decision have since occurred.

screamed "you ate my F-ing food," while "squeezing tighter" on her throat. As Appellant strangled Lora, Moneytha "dug her nails" into Lora, pinned Lora's arms down, and threatened Lora with a claw hammer she held over Lora's head. As a result of this incident, Lora obtained an order of protection against Appellant, which was served on Appellant on September 6, 2011. Due to this incident and at least one previous incident in which Moneytha had physically attacked Larry and "punched him in the face a couple of times," Larry decided to evict Moneytha. Larry gave her a written thirty-day notice to vacate and secured an order of protection against her. The order of protection was never served on Moneytha, however, because shortly after Appellant was served on September 6, he called Moneytha and warned her that the constable was coming to also serve her. She quickly packed her bags and left Larry's residence before she could be served.

¶4        On the evening of September 8, Appellant and Moneytha returned to Larry's house without notice or permission to do so, ostensibly to collect Moneytha's remaining belongings. Larry heard Moneytha enter the home, and he began to follow her. Appellant then entered the home, and Lora observed him trail Larry with a large, adult-sized baseball bat hidden behind his back. Lora alerted Dustin that Appellant had entered the home carrying a bat, and she retreated to her bedroom to call the police. Shortly thereafter, Appellant attacked Larry with the bat, while declaring, "Now I'm going to fucking kill you." Appellant landed several blows to Larry's head with the bat, and as Larry attempted to fend off the blows, Moneytha blocked Larry's escape and grabbed Larry's right hand to impede his resistance. She repeatedly urged Appellant to "[h]it him, hit him again."[4]

¶5        According to the State's witnesses, Larry's entire face was covered in blood, but he managed to escape into the living room and run behind Dustin, who "was in a defensive stance with two kitchen knives in his hand." Appellant said "[n]ow you all have to die," and began wildly swinging the bat and destroying numerous items throughout the kitchen and living room, including the oven and television. When Appellant swung the bat at Dustin, Dustin ducked and jabbed at Appellant with a knife. Appellant backed away, and the police eventually arrived.

---

[4]        The State charged Moneytha as a co-defendant in the attempted first degree murder and aggravated assault of Larry. As part of a plea agreement, Moneytha pled guilty to aggravated assault and was sentenced to 3.5 years' incarceration in the Arizona Department of Corrections.

**¶6**   Before trial, defense counsel filed a motion *in limine* asking the trial court to preclude the State from presenting evidence of the prior attack on Lora and the order of protection against Appellant in its case-in-chief. Defense counsel argued that evidence related to the attack on Lora was improper character evidence offered solely to show Appellant acted in conformity therewith and was unfairly prejudicial. *See* Ariz. R. Evid. 403, 404.

**¶7**   At a hearing on the motion, the trial court heard testimony from Lora and argument from counsel. The prosecutor argued the evidence was relevant to explain the motive and intent behind Appellant's otherwise seemingly unprovoked attack, and to establish the "plan or modus operandi" for Appellant and Moneytha acting in concert and with premeditation, especially with regard to the attempted murder charge. *See* Ariz. R. Evid. 404(b). The prosecutor also stated he anticipated Appellant would raise "a self-defense or defense of others" claim at trial and argued, in the alternative, that he should at least be permitted to discuss "these prior incidents and the orders of protection in order to be able to rebut those defenses." Defense counsel argued the State should not be permitted to present the evidence in its case-in-chief but conceded, after hearing the prosecutor's argument, that the evidence would likely be admissible in rebuttal, if Appellant "opens the door."

**¶8**   After hearing Lora's testimony and counsels' arguments, the trial court ruled the prosecutor would not be allowed to present the other act evidence in its case-in-chief, but he could present evidence related to the August attack on Lora in rebuttal if Appellant testified and presented evidence of self-defense or defense of others. Pursuant to the court's ruling, the State did not present evidence of the prior attack or order of protection against Appellant during its case-in-chief.[5]

**¶9**   Appellant presented several witnesses and also testified at trial. Before Appellant's testimony, the prosecutor asked the court for clarification of its prior ruling. The prosecutor stated he intended to impeach Appellant with the existence of the order of protection against

---

[5]  During his direct testimony, Larry made an unsolicited comment that he asked Moneytha when she appeared in his home on September 8 "if she had been served with a Restraining Order." Defense counsel moved for a mistrial. The trial court implicitly denied the motion, but immediately struck the testimony and instructed the jury that it was "to disregard those statements." We presume the jury followed the trial court's instruction. *See State v. LeBlanc*, 186 Ariz. 437, 439, 924 P.2d 441, 443 (1996).

Appellant should Appellant testify he believed he had permission to be at the house and had brought the bat either as a gift or to protect Moneytha while he helped her move any remaining belongings. The court confirmed its prior order regarding the Rule 404(b) evidence, but clarified that, if Appellant testified on direct examination that he thought he had permission to be at Larry's house, the prosecutor could impeach Appellant "with the fact that he had been served with an order of protection."

¶10        Appellant testified in pertinent part as follows: On September 6, the day Larry asked Moneytha to move out, Appellant called Larry. Larry gave Appellant permission to return with Moneytha on September 8 to gather her belongings, and assured Appellant that Lora would not be home.[6] Nonetheless, the baseball bat Appellant brought with him that day was a gift for Lora's young son,[7] with whom he was extremely close. When Appellant and Moneytha arrived at the house, Moneytha went inside immediately, while Appellant stayed outside to smoke a cigarette. Larry followed Moneytha to the room she had rented, and Appellant soon followed behind Larry. Larry "pulled out a very large kitchen chopping knife" and attempted to stab Moneytha in the back of the neck. Appellant dropped the bat and fought with Larry until Appellant eventually wrestled the knife from Larry's hands and threw it in the dining area. Larry then picked up the bat and began repeatedly hitting Appellant in the head and mouth with the bat. The two men struggled until Appellant took the bat from Larry and "was able to finally hit [Larry] in the head." Appellant "didn't even see Dustin the whole evening" and had "no idea" how the extensive damage had occurred throughout the home.

¶11        After Appellant rested his case, the prosecutor called Lora as a rebuttal witness. She testified about the August incident, stating that Appellant and Moneytha burst into her room and attacked her, while screaming and accusing her of having eaten a tortilla and cheese belonging

---

[6]        On direct examination, Appellant claimed he informed Larry that if Lora was at the house, he could not be there because Moneytha and Lora "did not get along," but Larry assured him Lora would not be present on that date. On cross-examination, Appellant admitted he had been served with an order of protection to prevent him from going to "Lora's residence," but maintained Larry had insisted he "be there to move Money[tha] out." Larry, however, testified that he had not given Appellant permission to be at the house.

[7]        Lora's son did not live with her.

to Moneytha and/or Appellant. She also testified Larry accompanied her to court when she secured the order of protection served on Appellant two days before the September 8 attack.[8]

**¶12**	On appeal, Appellant argues the trial court abused its discretion when it allowed the State to introduce the other act evidence in rebuttal. He maintains the evidence was not relevant to his self-defense or justification defenses, it did not fit into any exceptions provided by Rule 404(b), and it was merely improper character evidence admitted solely for the improper purpose of proving he was the aggressor. He also argues there was "no special significance" to the prior incident with Lora, no evidence Larry knew about that incident, and no evidence of prior acts of violence by him against Larry. Thus, according to Appellant, the prior dispute between him and Lora was "totally unrelated" to his "general self-defense and defense of another (Burns) claim." Appellant's arguments have no merit.

**¶13**	Absent an abuse of discretion, this court will not second-guess a trial court's ruling on the admissibility or relevance of evidence. *State v. Spreitz*, 190 Ariz. 129, 146, 945 P.2d 1260, 1277 (1997) (citation omitted). "An 'abuse of discretion' is discretion manifestly unreasonable, or exercised on untenable grounds or for untenable reasons." *State v. Sandoval*, 175 Ariz. 343, 347, 857 P.2d 395, 399 (App. 1993) (citing *Quigley v. City Court of City of Tucson*, 132 Ariz. 35, 37, 643 P.2d 738, 740 (App. 1982)).

**¶14**	"Although evidence of a person's character generally is not admissible to show conduct in conformity therewith, Ariz. R. Evid. 404(a), evidence of other acts may be admissible under Rule 404(b) to show 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *State v. VanWinkle*, 230 Ariz. 387, 393, ¶ 21, 285 P.3d 308, 314 (2012) (quoting Ariz. R. Evid. 404(b)). "Such evidence is admissible only when the evidence is relevant and the potential for prejudice does not substantially outweigh its probative value." *Id.* (citing Ariz. R. Evid. 403). However, the list of "other purposes" contained in Rule 404(b) is not exclusive, and "if evidence is relevant for any purpose other than that of showing the defendant's criminal propensities, it is admissible even though it refers to his prior bad acts." *State v. Jeffers*, 135 Ariz. 404, 417, 661 P.2d 1105, 1118 (1983) (citations omitted).

---

[8]	Defense counsel did not request a limiting instruction on the use of the other act evidence, and the court did not give one in its final instructions to the jury.

¶15      In this case, we find no abuse of discretion in the trial court's admission of the other act evidence. The evidence was offered as proper rebuttal to Appellant's assertions that he had been invited to Larry's house, where he and Moneytha had been the innocent victims of an unprovoked and seemingly inexplicable attack by Larry, and he had acted only in self-defense and in defense of Moneytha. *See VanWinkle*, 230 Ariz. at 393, ¶ 22, 285 P.3d at 314 (recognizing the State's entitlement to present other act evidence to rebut a claim of self-defense); *State v. Hardy*, 230 Ariz. 281, 289-90, ¶ 39, 283 P.3d 12, 20-21 (2012) (holding that other act evidence that the defendant hit the victim a day or two before the murder was admissible to prove motive and intent and rebut a theory of the defense). Rather than simply constituting improper character evidence, the other act evidence contradicted Appellant's assertions by supporting the State's theory that Appellant had not been invited to Larry's house (due to the protection order), and that Appellant had motive for returning to the house with a baseball bat with the intent to attack Larry because Appellant and his girlfriend, Moneytha, were angry at Larry for evicting Moneytha and helping to get the protection order against Larry.[9] The other act evidence also tended to rebut Appellant's testimony that the baseball bat he arrived with was nothing more than an innocent gift for Lora's son, and supported the State's theory that the evidence Appellant brought the bat with him was evidence tending to show proof of preparation and plan for the attack. Moreover, although the attack on Lora occurred approximately one month earlier, service and attempted service of the protection orders it engendered (that forced Moneytha to abandon the premises and leave some of her belongings) had occurred only two days before the date of the charged offenses, making the timing of the events close in proximity. Consequently, the other act evidence did much more than simply complete the story, it put in context the State's theory of the motive and intent behind Appellant's attack, while rebutting Appellant's justification defenses. *See State v.*

_____

[9]      Contrary to Appellant's arguments in his opening brief, the evidence showed Larry knew about the attack on Lora and accompanied her to court when she secured the order of protection against Appellant. Further, the attack on Lora was the precipitating reason Larry informed Moneytha that she had to vacate his premises. Thus, the prior attack on Lora formed the very basis for the orders of protection that prompted Appellant and Moneytha to return to Larry's home only two days after Appellant was served and attack Larry with a baseball bat, and countered Appellant's claim that he had simply acted in self-defense or in defense of another. *See VanWinkle*, 230 Ariz. at 393, ¶ 24, 285 P.3d at 314.

*Hargrave*, 225 Ariz. 1, 8-9, ¶¶ 12-14, 234 P.3d 569, 576-77 (2010) (concluding that other act evidence of racial bias was relevant to a defendant's motive in a murder prosecution; the fact that the State may have had evidence of other motives for the defendant's conduct did not preclude the State from also presenting evidence that a murder was motivated by racial bias).

¶16        Finally, the record shows the trial court considered the appropriate factors and engaged in the appropriate balancing analysis before ruling the evidence was admissible.  After due consideration of counsels' arguments, the trial court limited admission of the evidence to the State's rebuttal case in the event Appellant took the stand and claimed self-defense.  Implicit in the court's decision is the finding that the evidence was not unfairly prejudicial. *See* Ariz. R. Evid. 403.  *See also State v. Ramirez*, 178 Ariz. 116, 128, 871 P.2d 237, 249 (1994) ("[T]he trial court is presumed to know and follow the law." (citation omitted)); *State v. Brewer*, 170 Ariz. 486, 503, 826 P.2d 783, 800 (1992) (stating that the reviewing court presumes the trial judge is aware of the rules of evidence).  We agree.  Lora's rebuttal testimony concerning the incident was brief, comprising no more than three pages of transcript on direct examination and less than one and a half pages on cross-examination.  The prosecutor referred to the prior incident as an "indiscriminate act of violence," but only in his rebuttal closing. Furthermore, he did not argue to the jury that it should simply find Appellant guilty of the present offenses on that basis.[10]   Given the circumstances in this case, the trial court did not abuse its discretion in allowing the State to introduce the other act evidence in rebuttal.  *See Spreitz*, 190 Ariz. at 146, 945 P.2d at 1277.

### II.        Finding of Dangerousness

¶17        The trial court found the aggravated assault offense was a dangerous offense and sentenced Appellant accordingly.  Appellant argues the court erred when it failed to submit the aggravated assault verdict to the jury for a finding of dangerousness. *See* A.R.S. § 13-704(L).  Because Appellant did not raise this issue before the trial court, we conduct a fundamental error review.  *See State v. Henderson*, 210 Ariz. 561, 567-69,

---

[10]     We note the prosecutor did argue during rebuttal that Appellant had brought the bat "[b]ecause he's the aggressor.  He's always the aggressor." Even assuming this was improper argument, the comment itself was fleeting and not repeated.  Moreover, the fact that the jury acquitted Appellant of the other charges against him, including the more serious charge of attempted murder, indicates the other act evidence, and the prosecutor's argument, were not unduly prejudicial. *See* Ariz. R. Evid. 403.

¶¶ 19-26, 115 P.3d 601, 607-09 (2005).  To prevail under this standard of review, Appellant bears the burden of proving that error occurred, the error was fundamental, and the error caused him prejudice.  *See id.*; *State v. Lavers*, 168 Ariz. 376, 385, 814 P.2d 333, 342 (1991) (recognizing that before this court engages in fundamental error review, it must first find the trial court committed some error).

¶18 In this case, Appellant fails to establish error, let alone fundamental error.  The offense of aggravated assault may include as an element the use of a dangerous instrument.  *See* A.R.S. § 13-1204(A)(2).  Here, the trial court instructed the jury that, in order to find Appellant guilty of aggravated assault, it needed to find Appellant (1) intentionally, knowingly, or recklessly caused Larry physical injury, and (2) used a dangerous instrument to do so.  The court defined the term "dangerous instrument" for the jury as "anything that is readily capable of causing death or serious physical injury under the circumstances in which it is used, attempted to be used, or threatened to be used."  Therefore, implicit in the guilty verdict is the jury's finding that the offense was "dangerous" because the offense could only be committed if Appellant used a dangerous instrument, something that was "readily capable of causing death or serious physical injury."

¶19 If an element of the offense charged requires proof of the dangerous nature of the felony, a jury is not required to make a separate finding of "dangerousness."  *State v. Gatliff*, 209 Ariz. 362, 365, ¶ 17, 102 P.3d 981, 984 (App. 2004) (citing *State v. Smith*, 146 Ariz. 491, 498-99, 707 P.2d 289, 296-97 (1985)).  The trial court therefore did not err in concluding that the aggravated assault of Larry was necessarily a "dangerous" offense.

## CONCLUSION

¶20 For the foregoing reasons, we affirm Appellant's conviction and sentence.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh