NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

BRANDY LEE BRENTS, *Appellant*.

No. 1 CA-CR 16-0506
FILED 8-31-2017

Appeal from the Superior Court in Navajo County
No. S0900CR201400846
The Honorable Donna J. Grimsley, Judge, *Retired*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Coronado Law Firm, PLLC, Lakeside
By Kai M. Henderson, Eduardo H. Coronado
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Peter B. Swann joined.

---

J O H N S E N, Judge:

¶1            Brandy Lee Brents appeals his convictions and sentences for three counts of aggravated assault.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2            Shortly after midnight one night in October 2014, Navajo County Jail officers responded to a report that Brents had threatened to injure a fellow inmate.[1]  After defusing the situation and "calm[ing] [Brents] down," the officers left Brents in his cell.  Approximately an hour later, one of the officers received a report that Brents had covered his cell window with paper, obscuring officers' view inside his cell.  Because jail personnel are required to periodically check on inmates to ensure their welfare, several officers asked Brents to remove the window covering.  Rather than comply, Brents threatened to harm anyone who entered his cell.

¶3            Given this threat, officers assembled to open Brents's cell door.  When they entered, they saw Brents was holding a blanket in front of him and standing "in a boxing stance."  Upon seeing the officers, Brents dropped the blanket and "started swinging," striking Officer J.T.'s face with a closed fist.  After hitting J.T., Brents swung at Officer J.L.  J.L. dodged Brents's punches, grabbed his neck, and placed him in a headlock.  Brents still managed to strike J.L.'s head with a closed fist, injuring him.  At that point, J.T. used a Taser on Brents, and he immediately became compliant.

¶4            The State charged Brents with three counts of aggravated assault.  The first charge alleged he intentionally, knowingly or recklessly caused physical injury to J.L. while knowing or having reason to know he was acting in his official capacity as an employee of the Navajo County Jail.  The other two charges alleged Brents knowingly touched J.L. and J.T. with the intent to injure, insult or provoke while knowing or having reason to

---

[1]      We view the facts in the light most favorable to sustaining the verdicts.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

know each was an employee of the Navajo County Jail acting in an official capacity. The State also alleged Brents had historical prior felony convictions.

**¶5** Taking the stand in his own defense, Brents testified he had covered his cell window for privacy because a detention officer had taunted him and because he wanted privacy. According to Brents, when the officers entered his cell shortly thereafter, he asked, "What's going on?" and the officers immediately "attacked" him, repeatedly hitting his face and chest. He said that once he was shot with the Taser, he fell to the floor. On cross-examination, the prosecutor asked Brents about a jail altercation he had with two officers two years before. Brents acknowledged that in that earlier incident, he had claimed the officers struck his face and choked him, and admitted that a jail video recording proved those allegations false.

**¶6** After a two-day trial, the jury convicted Brents of all three charges. The superior court found Brents had two historical prior felony convictions and sentenced him to presumptive concurrent five-year terms of incarceration. Brents timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2017), 13-4031 (2017), and -4033(A)(1) (2017).[2]

## DISCUSSION

### A.    Alleged Double Jeopardy Violation.

**¶7** Brents contends the two aggravated-assault convictions concerning J.L. violated the constitutional proscription against double jeopardy.

**¶8** As charged in this case and set forth in A.R.S. § 13-1203 (2017), a person commits assault under subsection (A)(1) by intentionally, knowingly or recklessly causing physical injury to another person, or, under subsection (A)(3), by knowingly touching another person with the intent to injure, insult or provoke such person. Conduct violating either subsection constitutes an aggravated assault when the perpetrator is imprisoned in a county jail and knows or has reason to know that the victim is acting in an official capacity as an employee of the jail. A.R.S. § 13-1204(A)(10) (2017).

---

[2]    Absent material revision after the date of an alleged offense, we cite a statute's current version.

**¶9** The Double Jeopardy Clause protects against multiple punishments for the same offense. *State v. Jurden*, 239 Ariz. 526, 529, ¶ 10 (2016). This protection "may be triggered . . . if the same conduct is held to constitute a violation of two different criminal statutes." *Id.* When the same act "constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

**¶10** Here, Brents argues that under *Blockburger*, the State presented evidence that he touched J.L. only once, and contends that a single contact cannot support convictions under both aggravated assault subsections. The evidence at trial, however, contained evidence sufficient to support convictions based on separate contacts by Brents with J.L. Evidence that Brents punched J.L. plainly satisfied his conviction under § 13-1203(A)(1). In addition to punching J.L., Brents also struggled vigorously with J.L. as the officer sought to pull him to the floor of his cell. In struggling against J.L., Brents was so forceful that officers needed to deploy a Taser to subdue him. Viewing the record in the light most favorable to sustaining the verdicts, footnote 1 *supra,* the jury reasonably could have concluded that Brents's continued struggle with J.L. constituted a touching in violation of A.R.S. § 13-1203(A)(3).

## B. Admission of Other-Act Evidence.

**¶11** Brents next argues the superior court improperly admitted evidence of other acts in violation of Arizona Rules of Evidence 403 and 404.

**¶12** Before trial, the State moved *in limine* to introduce evidence that Brents previously "threatened" and "attacked" detention officers "in order to prove [Brents's] intent to harm detention officers" in the 2014 incident and to rebut Brents's noticed claim of self-defense. At an evidentiary hearing on the motion, Brents argued the jury might improperly view the prior acts as character evidence and urged the court to preclude the evidence as unfairly prejudicial. In the alternative, he requested a limiting instruction. The court granted the State's motion, concluding that the other acts were admissible to prove Brents's intent and to disprove his claim of self-defense, and that the probative value of the other-act evidence outweighed any attendant prejudice.

**¶13** At trial, J.L. testified that while Brents was jailed in 2013, detention officers entered his cell to conduct a welfare check because he had

threatened suicide. According to J.L., as they entered, Brents "became combative," bit one of the officers, disarmed another officer of his Taser, pointed the Taser at J.L., and kicked J.L. in the face. In addition, a sergeant testified that during an occasion earlier in 2014 in which Brents had covered his cell window, when officers entered to remove the covering, Brents used his mattress as a shield and engaged in an "altercation" with the officers. Finally, two officers testified that on another occasion in 2014, when several officers attempted to move Brents for safety reasons, Brents refused to comply, threatened to assault the officers, and attempted to bite and kick them.

¶14       In its final instructions to the jury, the superior court addressed this evidence:

> You have heard evidence that the Defendant was involved in acts on dates other than October 4th, 2014. This evidence is admitted only for the limited purposes of helping you determine whether the Defendant acted with the intent as to the alleged crimes of October 4th, 2014, and helping you determine whether the Defendant acted in self-defense on October 4th, 2014. Therefore you must consider it only for those limited purposes and not for any other purpose.

¶15       We review a superior court's ruling on a motion *in limine* for abuse of discretion. *State v. Gamez*, 227 Ariz. 445, 449, ¶ 25 (App. 2011). We also review a court's admission of other-act evidence for abuse of discretion. *State v. VanWinkle*, 230 Ariz. 387, 392, ¶ 18 (2012).

¶16       "Although evidence of a person's character generally is not admissible to show conduct in conformity therewith, Ariz. R. Evid. 404(a), evidence of other acts may be admissible under Rule 404(b) to show 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *VanWinkle*, 230 Ariz. at 393, ¶ 21 (quoting Ariz. R. Evid. 404(b)). Before admitting other-act evidence, the court must find that the evidence is offered "for a proper purpose under Rule 404(b), is relevant under Rule 402, and that its probative value is not substantially outweighed by the potential for unfair prejudice under Rule 403." *State v. Mott*, 187 Ariz. 536, 545 (1997). The court also must provide an appropriate limiting instruction if requested under Rule 105. *Id*.

¶17       When a defendant claims to have acted in self-defense, the State is "entitled to present evidence of other indiscriminate acts of violence to rebut this claim." *VanWinkle*, 230 Ariz. at 393, ¶ 22 (evidence that

defendant previously "attacked others at the jail facility without justification supported the State's argument that [the defendant] did not act in self defense" when he committed the charged act). Likewise, the State may present other-act evidence to show the defendant acted with intent. *Id.*

**¶18** Applying these principles here, Brents does not dispute that the prior-act evidence was relevant, nor that the State sought to introduce it for a proper purpose, namely, to demonstrate his intent and rebut his claim of self-defense. He contends, however, that the State also used the prior acts as propensity evidence to prove he has a "trait of responding without provocation." This contention is not supported by the record. Although the testifying officers denied provoking Brents during any of the prior incidents, the prosecutor did not argue that Brents had a propensity to act violently without provocation and did not reference any of the challenged evidence during closing argument. *See VanWinkle*, 230 Ariz. at 393, ¶ 24 ("State did not belabor [defendant's] past violence in arguments to the jury"). Indeed, the only uncharged act the prosecutor addressed in his closing argument was the 2012 altercation and Brents's assertion there that a sergeant and a detention officer had struck his face and choked him. The prosecutor urged the jury that in evaluating Brents's credibility, it should consider his admission at trial that those allegations were false.

**¶19** Likewise, Brents's argument that the other-act evidence was unfairly prejudicial is not well-founded. Although the evidence was unfavorable to the defense, it did not suggest the jury should render its "decision on an improper basis, such as emotion, sympathy, or horror." *Mott*, 187 Ariz. at 545. Further, the superior court gave the jury a limiting instruction, admonishing jurors that the evidence could be considered only for purposes of evaluating Brents's intent. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006) ("We presume that the jurors followed the court's instructions."). Therefore, because the other-act evidence was relevant, offered for a proper purpose, probative, and not unfairly prejudicial, the superior court did not abuse its discretion by admitting it.

## C.    Preclusion of Hearsay Evidence.

**¶20** Brents next argues the superior court improperly excluded portions of his testimony as inadmissible hearsay. He also contends, for the first time on appeal, that the State's "barrage" of hearsay objections "fundamentally undermine[d] [his] ability to testify on his own behalf."

**¶21** At trial, Brents testified regarding the events that unfolded before the charged incident. He claimed a detention officer repeatedly

kicked his door, called Brents "a rat," and told him he was "going to get really messed up" for reporting the officer. The prosecutor raised a hearsay objection to this testimony, which the court sustained. Moments later, defense counsel asked Brents whether he had relayed some concerns regarding another inmate to detention officers. When the State objected on hearsay grounds, defense counsel withdrew the question. Defense counsel then again elicited Brents's testimony that a detention officer kicked his cell door and "call[ed] [Brents] a rat" on the day in question. After the prosecutor objected based on hearsay, the court struck the portion of Brents's testimony referencing an out-of-court statement.

¶22        Without objection, Brents testified that an officer ordered him to remove the covering from his cell window, but the court sustained the prosecutor's hearsay objection when Brents attempted to recount the precise "derogatory language" the officer purportedly used. Nonetheless, Brents was permitted to testify that the officer spoke to him in a loud and aggressive tone. Without objection, Brents testified that the team of officers threatened to "[expletive] him up" as they entered his cell, and then "attacked" him without provocation, repeatedly hitting his face and chest. Brents stated he could not breathe when J.L. held him in a headlock, and claimed he pled with the other officers for "help," to no avail. He testified that, without warning, a detention officer then Tased him and his body stiffened, before falling to the floor. Brents testified that as he lay on the floor of his cell, he told the officers he just "want[ed] to go to sleep." The court sustained the prosecutor's hearsay objection to this testimony. Later, the prosecutor raised another hearsay objection when Brents attempted to recount that officers had warned him not to move after he was Tased, and the court sustained the objection.

¶23        At that point, the court held a bench conference, at which defense counsel argued he was not attempting to elicit the out-of-court statement to prove the truth of the matter asserted. The court nonetheless found the testimony constituted "self-serving" hearsay and told defense counsel the testimony was inadmissible absent a recognized exception. In response, defense counsel asserted that Brents's testimony qualified as a "present sense impression." Because Brents was not recounting a statement that described or explained events as they were perceived, the court found the proffered exception inapplicable. Later, the court sustained yet another hearsay objection when Brents attempted to testify that an inmate threatened to harm his children.

¶24        Abandoning his contention that any out-of-court statement was admissible as a present sense impression, Brents argues for the first

time on appeal that the precluded statements were admissible as statements by an opposing party.

¶25        In general, out-of-court statements offered to prove the truth of the matter asserted are inadmissible unless grounded in a hearsay exception. *See* Ariz. R. Evid. 801(c), 802. Before considering whether an exception to the hearsay rule applies, however, the court must decide whether the statement is hearsay to begin with, which requires it to consider whether the statement was offered for the truth of the matter asserted. *See* Ariz. R. Evid. 801(c)(2); *State v. Rogovich*, 188 Ariz. 38, 42 (1997) ("Testimony not admitted to prove the truth of the matter asserted by an out-of-court declarant is not hearsay and does not violate the confrontation clause."); *State v. Chavez*, 225 Ariz. 442, 443, ¶ 6 (App. 2010) (statements were non-hearsay when not offered for the truth of the matter asserted).

¶26        As Brents eventually argued at trial, the challenged statements were not offered to prove the matter asserted, but to demonstrate Brents's state of mind at the time of the incident. For example, when Brents testified that an officer had called him a "rat," that testimony was not offered to show that Brents indeed was a rat (or that he had "ratted on" another prisoner), but to show the effect the officer's statement had on Brents's mental state—why Brents might have been angry at the officer. Accordingly, the superior court erred in sustaining the State's hearsay objections to the testimony.

¶27        Notwithstanding the erroneous exclusion of these statements, however, Brents was permitted to testify that: (1) a detention officer taunted and "provoked" him on the day in question; (2) a sergeant loudly and aggressively ordered him to remove his window coverings; (3) a team of officers threatened to hurt him as they entered his cell; (4) a detention officer, unprovoked, hit him multiple times in his face and chest; and (5) a detention officer Tased him while he was held in a headlock. Thus, the record demonstrates that Brents had a full opportunity to argue he was targeted and attacked by the detention officers, and only struck them because he feared for his safety. Because he therefore was able to present the substance of his defense, we cannot say the superior court prejudiced him when it erroneously excluded the statements.

**CONCLUSION**

**¶28** For the foregoing reasons, we affirm Brents's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA